UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **CHARLES WOLFORD**, ON BEHALF OF HIMSELF AND OTHERS SIMILARLY SITUATED, §§§§§ *Plaintiffs*, §§ vs. § **NATIONWIDE INVESTIGATIONS & SECURITY, INC. AND ALLEN HOLLIMON** §§§§§§§ *Defendants*. §§ | CASE NO._____ JURY DEMANDED |

## ORIGINAL COMPLAINT AND JURY REQUEST

TO THE HONORABLE JUDGE OF THIS COURT

COMES NOW Charles Wolford ("Plaintiff"), individually and on behalf of all others similarly situated, complaining of Nationwide Investigations & Security, Inc. ("Nationwide") and Allen Hollimon ("Mr. Hollimon"), individually, (collectively "Defendants"), and for causes of action will respectfully show unto this Court the following:

### PARTIES AND SERVICE

1. Plaintiff Charles Wolford is a citizen of the United States of America, the State of Texas, and resides in Harris County. Plaintiff worked for Defendant as a security guard performing security services for Defendant. Plaintiff's written consent is attached as Exhibit A.

2. The Collective Members ("Collective Members") are all current and former security guards or bodyguards employed by Defendant within the last three years.

1

3. Nationwide Investigations & Security, Inc. ("Nationwide") is a Texas corporation with its principal office located in Houston, Texas. With respect to Plaintiff, Nationwide is subject to the provisions of the Fair Labor and Standards Act ("FLSA"). Nationwide was at all relevant times an enterprise engaged in commerce or in the production of goods for commerce, as defined by 29 U.S.C. §§ 203(r) and (s), and had gross annual revenues in excess of $500,000.00. Nationwide Investigations & Security, Inc. may be served with process through its registered agent for service of process, Allan Hollimon, 2425 West Loop South, Suite 200, Houston, Texas 77027.

4. Defendant Allen Hollimon ("Mr. Hollimon") is an individual who is an "employer" as defined by the FLSA. With respect to Plaintiff, Mr. Hollimon is subject to the provisions of the FLSA. Mr. Hollimon acted on behalf of Nationwide Investigations & Security, Inc. in setting the terms of wages and hours throughout the company and running it on a daily basis. Mr. Hollimon worked as part of the enterprise engaged in interstate commerce as defined by 29 U.S.C. § § 203(r) and (s). Defendant Allen Hollimon may be served with process at 2425 West Loop South, Ste. 200, Houston, Texas 77027 or wherever he may be found.

### JURISDICTION AND VENUE

5. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b).

6. All parties are subject to personal jurisdiction in the Southern District of Texas. Defendants made themselves subject to this Court's jurisdiction by maintaining a physical presence and business operations in this District.

7. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 (b) & (c) because Defendants reside in this District and most of the relevant facts occurred in this District.

## NATURE OF THE ACTION

8. This is a private civil action brought against Defendant Nationwide Investigations & Security, Inc. and Defendant Allen Hollimon (collectively, "Defendants") failed to pay Plaintiff and others similarly situated for all hours worked (in part by failing to properly compensate for work performed during meal breaks and/or routinely deducting wages for meal breaks that were not taken) and failed to pay overtime wages when they worked more than (40) hours in a workweek as required by the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA"). Instead, Defendant only paid them straight time for hours with no overtime pay for hours worked over forty (40) in a week. Plaintiff also asserts that Defendant misclassified him, and others similarly situated as independent contractors. Defendant's pay practices and policies applied not only to Plaintiff, but also to all Collective Members. Therefore, Plaintiff brings this suit on behalf of himself and other similarly situated Collective Members. This collective action seeks to recover the unpaid wages, unpaid overtime wages, and other damages owed to Plaintiff and all other similarly situated employees.

## CONDITIONS PRECEDENT

9. All conditions precedent to jurisdiction have occurred or been complied with.

## FACTS

10. Nationwide is a Texas based security guard firm located at 2425 W Loop S Suite #300, Houston, TX 77027, that provides security guards and investigatory personnel for industrial plants, residential complexes, fire investigations, private and public interests, hotels, special events, VIPs, celebrities, schools, and more.

11. Defendant Allen Hollimon owns and manages Nationwide Investigations & Security, Inc., providing security services for businesses and individuals across the nation. Mr. Hollimon executed the policies regarding the management and wages of security guards, including Plaintiff.

12. Mr. Hollimon acted directly or indirectly on behalf of Nationwide and, at all times mentioned herein, was an "employer" or "joint employer" of Plaintiff within the meaning of the FLSA. Mr. Hollimon exerted operation and management control over Nationwide including day to day management. He directly controls and manages the operations at Nationwide. Mr. Hollimon also controls the nature, pay structure, and employment relationship of Plaintiff and the Collective Members. Mr. Hollimon had, at all times relevant to this lawsuit, the authority to hire and fire employees of Nationwide, the authority to direct and supervise the work of the employees, the authority to sign on the business' checking accounts, including payroll accounts, and the authority to make decisions regarding employee compensation and capital expenditures. Additionally, Mr. Hollimon was responsible for the day-to-day affairs of Nationwide. Specifically, Mr. Hollomon is responsible for determining whether Nationwide complies with FLSA.

13. During each of the three years prior to this complaint being filed, Defendants were an enterprise engaged in interstate commerce, operating on interstate highways, purchasing materials through commerce, transporting materials through commerce and on the interstate highways, conducting transactions through commerce, including the use of credit cards, phones and/or cell phones, electronic mail and the Internet.

14. During each of the three years prior to this complaint being filed, Defendants regularly owned and operated a business engaged in commerce or in the production of goods for commerce as defined by §3(r) and 3(s) of the Act, 29 U.S.C. §2013(r) and 203(s).

15. At all times pertinent to this Complaint, Plaintiff and Collective Members were engaged in commerce and their work was essential to Defendants' business.

16. During each of the three years prior to this complaint being filed, Defendants conducted sufficient business to exceed an annual gross volume of sales of at least $500,000 (exclusive of excise taxes) based upon the volume of business.

17. During each of the three years prior to this complaint being filed, Defendants' employees routinely used or handled goods or materials, including vehicles, tools, equipment, telephones, and computers, that are produced for interstate commerce or actually traveled in interstate commerce.

18. Upon information and belief, Defendants engaged in the acts alleged herein and/or condoned, permitted, authorized, and/or ratified the conduct of its employees and agents, and other Defendants and are vicariously or strictly liable for the wrongful conduct of its employees and agents.

19. At all times during the three (3) years prior to the filing of the instant action, Defendants categorized all security guards employed by Defendants as "independent contractors" and have failed and refused to pay overtime compensation to such employees.

20. The amount of skill required of a security guard is more akin to an employment position than that of a typical independent contractor.

21. Upon information and belief, Defendants acted as the agent or employee of each other and carried out a joint scheme, business plan, or policy in all respects thereto. Thus, the acts of each Defendant are legally attributable to the other Defendant and these Defendants, in all respects, acted as employers and/or joint employers of Plaintiff and Collective Members since they each exercised control over wage payments and duties.

22. At all times mentioned herein, each and every Defendant was the successor of the other and each assumes the responsibility for the acts and omissions of all other Defendants.

23. At all times relevant to this action, Defendants exercised a great deal of operational and management control over the subject business, particularly in the areas of terms and conditions of employment applicable to all security guards and officers.

24. Plaintiff, Charles Wolford, worked for Defendants as a security officer for the Defendant. Plaintiff was an integral part of Defendants' business. Wolford's duties included, but were not limited to, providing unarmed and armed security at different locations that were assigned to him, checking on lots, checking on and securing occupied buildings and empty buildings, engaging in active theft prevention at local stores and checking receipts at the doors of such establishments.

25. The primary duty of a security guard or officer is being responsible for guarding a place by making sure the people or things in it are not harmed. They are also often hired to escort and protect individuals and/or groups.

26. Plaintiff was an hourly employee that was paid between $12 and $15 an hour for hours worked and was paid straight time for any hours worked over forty (40) hours in a workweek. Defendants did not pay Plaintiff time-and-a-half for hours he worked in excess of forty (40) hours in any given week.

27. Defendants exercised complete control over Plaintiff and Collective Members' schedule, job duties, assignments, uniform(s), and the manner and method in which Plaintiff would carry out his duties.

28. Plaintiff and other similarly situated employees were required to clock into various applications during the course of their employment with Nationwide to prove that they were at their job.

29. As a non-exempt employee, Plaintiff was entitled to be paid overtime wages for all hours worked over forty (40) during each workweek. Defendants failed to pay Plaintiff and Collective Members the required overtime premium in many workweeks that the Plaintiff was employed by Defendants, as the Plaintiff frequently worked in excess of 40 hours in a workweek.

30. When Plaintiff brought up the issue of not being paid his legally mandated overtime wages, Mr. Hollimon told him to "get a lawyer."

31. Defendant determined the hours Plaintiff and the Collective Members worked.

32. Defendant required Plaintiff and the other Collective Members to take an hour lunch break during their shifts, however, they were never relieved of duty. Plaintiff and Collective Members were required to man their post and remain responsible for security services throughout their shift. Instead of allowing Plaintiff and Collective Members to clock out for their meal periods and then clock back in at the end of the meal period, Defendant unilaterally deducted time from Plaintiff's and Collective Members' pay with knowledge they are not able to and have not taken a meal period during their shift. Therefore, Plaintiff and Collective Members continued to work during their lunch breaks that they were never paid for.

33. Defendants' policies and practices result in Collective Members being denied wages due under the FLSA. Defendants knowingly and willfully permitted Plaintiff and Collective Members to perform work and/or remain on duty during their meal breaks, subjecting them to interruptions during their meal breaks at all times. Defendants deliberately failed to pay Plaintiff and Collective Members compensation for work performed.

34. Defendants further violated the FLSA when deducting the cost of any uniforms, and/or equipment, and/or hotel accommodations required to perform services for Defendant when such deductions cut into any overtime wages earned and/or reduced Plaintiff and the Collective Members's pay below minimum wage.

35. Defendants also failed to pay Plaintiff and Collective Members for all hours worked. Defendants failed to pay Plaintiff and the Collective Members for travel time between work sites and/or travel time where Collective Members should have been deemed on the clock as they were performing duties in furtherance of Defendants to complete their job responsibilities.

36. Defendant determined Plaintiff's and the Collective Members' duties as well as work locations.

37. Defendant would assign Plaintiff and other Collective Members to security jobs that they were not qualified for. Plaintiff and other Collective Members that are qualified as a level two security guards, were sometimes assigned to level three (armed) security jobs without the proper qualifications or equipment.

38. Defendants had the power to hire and fire Plaintiff and Collective Members.

39. Defendants made personnel and payroll decisions, including Plaintiff's and the Collective Members' pay rates, their job assignments, and the decision to not pay them all of their regular time or any overtime.

40. Plaintiff had no investment in any facilities related to the work performed.

41. Plaintiff had no opportunity for profit and/or loss and could not, in any way, affect the nature and scope of the work or the business.

42. At all times relevant hereto, the Defendants knew of, approved of, and benefited from Plaintiff's regular and overtime work. Plaintiff was not an "exempt" employee.

43.	Defendants did not make a good faith effort to comply with the overtime provisions contained within the FLSA.

44.	Defendants' actions were willful and in blatant disregard of Plaintiff's federally protected rights.

45.	Plaintiff and Collective Members are non-exempt employees who serve as security guards, an essential role in Defendants' operations.

46.	Plaintiff, Charles Wolford, and the Collective Members are employed by Defendant as security guards or security officers and are paid hourly.

47.	Plaintiff and the Collective Members regularly worked more than 40 hours in a workweek. Defendants did not pay them the extra half-time required by the FLSA.

48.	Defendant knew Plaintiff and the Collective Members worked over forty hours per week and that they did not receive overtime pay.

49.	Plaintiff and the Collective Members are/were issued a bi-weekly check for some, but not all, of the hours worked in a two-week pay period. Defendant deducted meal periods from each shift worked, even though Plaintiff and Collective Members were not given a meal break. Defendants also made deductions for uniforms, equipment, hotel accommodations, and travel accommodations required in the performance of their job.

50.	As a result of Defendants' across-the-board standard operating procedure of mischaracterizing security guards as "independent contractors" and their consequent failure to pay and overtime wages whatsoever, it is a certainty that numerous other current and former employees who worked at Nationwide during the applicable limitations period would elect to participate in this action if provided notice of the same.

51. Plaintiff is "similarly situated" to the 29 U.S.C. § 216(b) class of persons he seeks to represent and will adequately represent the interests of the class.

52. At all times relevant hereto, the Defendants knew of, approved of, and benefited from Plaintiff and Collective Members' regular and overtime work. Plaintiff and Collective Members were not an "exempt" employee. Defendants knowingly, willfully, and/or with reckless disregard carried out their illegal pattern and/or practice of failing to pay overtime compensation with respect to Plaintiff and Collective Members.

### COLLECTIVE ACTION ALLEGATIONS

53. Plaintiff hereby incorporates by reference paragraphs 10 through 48 of this Complaint.

54. At all relevant times, Plaintiff and the Collective Members were individual "employees" of Defendants (as defined in Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1)).

55. In addition to Plaintiff, Defendants employ many other security guards and officers with the exact same job description as Plaintiff, carried out the same job duties, were misclassified as independent contractors, and were paid by Defendants in the same manner as Plaintiff.

56. Plaintiff and all similarly situated individuals employed as security guards performed similar job duties when working, including but not limited to the following: guarding facilities, ensuring compliance with facility rules and regulations, safeguarding individuals or preventing unauthorized individuals from accessing areas under guard, making and keeping appropriate records, and other matters related to the job of security guard.

57. Plaintiff brings this action as an FLSA collective action pursuant to 29 U.S.C. § 216(b) on behalf of all persons who were or are employed by Defendants as security guards or

security officers at any time during the three (3) years prior to the commencement of this action to present.

58. Further, each Collective Member is similar to Plaintiff in terms of job duties, pay structure, misclassification as independent contractors and/or the denial of overtime and minimum wage. Thus, although the amount of damages may vary from individual to individual, the damages can be calculated by using a single mathematical formula that is individually applicable to each Collective Member. The Collective Members are, therefore, similarly situated in terms of pay provisions.

59. These non-exempt employees are entitled to overtime pay, at the rate of one and one-half (1½) their regular rate when those hours exceeded forty (40) hours per workweek, for the same reasons as Plaintiff, and are, therefore, similarly situated to Plaintiff. These employees are collectively referred to as the "Collective Members."

60. Defendants engaged in a pattern and practice of deducting certain costs and expenses from the wages of Plaintiff and the Collective Members. As the direct and proximate cause of Defendants' unlawful conduct, Plaintiff and the Collective Members have suffered lost wages and other damages.

61. Defendants' failure to pay overtime compensation and hours worked at the minimum wage rate required by the FLSA results from generally applicable policies or practices and does not depend on the personal circumstances of the Collective Members.

62. Dozens of these employees have worked for Defendant over the last few years. Accordingly, Defendant's payroll scheme extends well beyond Plaintiff.

63. No justification or exemption excused Defendants from paying Collective Members for all work performed and time spent working, and Defendants did not make a good

11

faith effort to comply with the FLSA. As such, Defendants knowingly, willfully, or with reckless disregard carried out their illegal pattern or practice regarding overtime compensation with respect to the Members of the Class.

64.     As such, Plaintiff and Collective Members bring their FLSA claims as a collective action on behalf of the Collective Members. These Collective Members should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b). Therefore, the collective members are properly defined as:

**"All security officers, security guards and/or bodyguards employed by Defendants in the three (3) years preceding the filing of Plaintiff's Original Complaint."**

### INDIVIDUAL LIABILITY UNDER THE FLSA

65.     In *Lamonica v. Safe Hurricane Shutters, Inc.*, the U.S. Court of Appeals for the Eleventh Circuit held that individuals can be liable for FLSA violations under an expansive interpretation of "employer" for directors and officers. *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299 (11th Cir. 2013). The FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The Fifth Circuit stated "[t]he dominant theme in the case law is that those who have operating control over employees within companies may be individually liable for FLSA violations committed by the companies." *Gray v. Powers*, 673 F.3d 352, 357 (5th Cir. 2012).

66.     Where an individual exercises "control over the nature and structure of the employment relationship," or "economic control" over the relationship, that individual is an employer within the meaning of the FLSA and is subject to liability. *Lambert v. Ackerley*, 180 F.3d 997 (9th Cir. 1999). Factors related to "economic control," include ownership interest, operational control of significant aspects of the day-to-day functions, the power to hire and fire employees,

determine salaries, and the responsibility to maintain employment records. *Gray*, 673 F.3d at 355 (citing *Williams v. Henagan*, 595 F.3d 610, 615 (5th Cir. 2010)).

67. Mr. Hollimon, as an owner and manager of Nationwide, is individually liable for failing to pay Plaintiff's and the Collective Members' wages. The actual identities of other managers and owners and/or affiliated companies are unknown at this time.

### CAUSE OF ACTION

### FAILURE TO PAY OVERTIME WAGES PURSUANT TO FLSA, 29 U.S.C. § 207

68. Defendants failed to pay Plaintiff and the Collective Members the applicable overtime wage for each hour in excess of forty (40) during each workweek in which Plaintiff and the Collective Members worked in violation of 29 U.S.C. § 207.

69. An employer who pays a non-exempt employee on an hourly basis must pay time-and-a-half for any hours worked over forty (40).

70. Plaintiff and Collective Members are non-exempt, hourly paid, employees who worked as security personnel for Defendants.

71. Defendants failed to pay Plaintiff and Collective Members the applicable overtime wage for each hour in excess of forty (40) during each workweek in which Plaintiff worked in violation of 29 U.S.C. § 207. Specifically, Plaintiff generally worked between 40 and 60 hours per week.  Upon information and belief, there are Collective Members who often worked in excess of 60 hours.

72. By failing to pay Plaintiff and Collective Members overtime at one-and-one-half times their regular rates for every hour that they worked over forty (40) hours in a workweek, Defendants, knowingly, intentionally, and willfully violated the FLSA's overtime provisions.

## DAMAGES

73. Plaintiff and the Collective Members hereby incorporate by reference the forgoing paragraphs as if set forth in full herein.

74. Due to Defendants' FLSA violations, Plaintiff and the Collective Members are entitled to recover from Defendants minimum wage compensation for each hour they worked and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b).

75. Due to Defendants' FLSA violations, Plaintiff and the Collective Members are entitled to recover from Defendants, overtime wage compensation and an equal amount in the form of liquidated damages, as well as reasonable attorneys' fees and costs of the action, including interest, pursuant to 29 U.S.C. § 216(b).

76. Plaintiff and the Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

77. Plaintiff and the Collective Members are entitled to recover from Defendants all fees that Defendants required Plaintiff and Collective Members to pay other employees in order to work at Nomad, involving but not limited to forced tip sharing.

## JURY REQUEST

78. Plaintiff hereby requests a trial by jury.

## RELIEF REQUESTED

Plaintiff prays for relief as follows:

1. An order allowing this action to proceed as a collective action under the FLSA and directing notice to the Collective Members;

2. Judgment awarding Plaintiff and the Collective Members all unpaid overtime compensation, liquidated damages, attorneys' fees and costs under the FLSA;

3. An award of post-judgment interest on all amounts awarded at the highest rate allowable by law; and

4. All such other and further relief that Plaintiff and the Collective Members are justly entitled.

Respectfully submitted,

**STEPHENS REED & ARMSTRONG, PLLC**

By: ___/s/ Derrick A. Reed_____
    **Derrick A. Reed**
    Attorney-in-Charge
    Federal I.D. No.: 899172
    State Bar No.: 24053780
    Email: derrick@srapllc.com
    **Marrick Armstrong**
    Federal I.D. No.: 611068
    State Bar No. 24057695
    Email: marrick@srapllc.com
    **Ghazal A. Vahora**
    Federal I.D. No.: 2861474
    State Bar No.: 24094993
    Email: ghazal@srapllc.com
    2626 South Loop W., Suite 522
    Houston, Texas 77054
    Telephone: (281) 489-3934
    Facsimile: (281) 657-7050

**ATTORNEY FOR PLAINTIFFS**